| | |
|---|---|
| TERRY LEONARD,<br>STEVEN KENDLEY, MICHEL GEHL,<br>BEN WOODS, and LEVI READ,<br><br>            Plaintiffs,<br><br>    vs.<br><br>ALAN JAY DOYLE,<br>MICHAEL SARGEANT,<br>DAN DURYEE, and DAN YONKIN,<br><br>            Defendants. | CV 12-25-M-DLC-JCL<br><br><br>FINDINGS AND<br>RECOMMENDATION |

This matter is before the Court on Defendants Alan Doyle, Michael Sargeant, Dan Duryee and Dan Yonkin's Fed. R. Civ. P. 56 motion for summary judgment. For the reasons discussed, the Court recommends that the motion be granted, and this action be dismissed.

## I.      BACKGROUND

Plaintiffs are present and former law enforcement officers employed with the Lake County Sheriff's Department in Polson, Montana. Defendant Alan Doyle is presently the Sheriff of Lake County, Montana, and Defendants Michael Sargeant, Dan Duryee, and Dan Yonkin are all officers employed with the Lake County Sheriff's Department.

Plaintiffs commenced this action regarding events that occurred in connection with their employment with the Lake County Sheriff's Department. Plaintiffs allege Defendants and other law enforcement officers engaged in various unlawful activities which Plaintiffs reported to various law enforcement authorities or agencies. Also, during the 2010 election season Plaintiffs expressed their opposition to Defendant Alan Doyle's candidacy for Sheriff of Lake County. In response to these actions by Plaintiffs, Defendants allegedly retaliated against Plaintiffs by subjecting them to adverse circumstances at work and a hostile work environment.

In Count I, all five Plaintiffs advance a claim under 42 U.S.C. § 1983 alleging the Defendants retaliated against them for exercising their First Amendment right to freedom of speech in the 2010 Sheriff's race. In Count II, Plaintiff Terry Leonard advances a separate claim under section 1983 alleging Defendants Alan Doyle and Dan Yonkin seized and searched Leonard's personal home computer equipment in violation of the right secured him by the Fourth Amendment.

Finally, in Count III all five Plaintiffs advance claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq. predicated upon two allegedly unlawful actions committed by Defendants.

Plaintiffs allege Defendants acted in concert and with a criminal purpose (1) by tampering with, and threatening, witnesses to prevent Plaintiffs from reporting Defendants' alleged unlawful activities and violations of federal law, and (2) by retaliating against witnesses and Plaintiffs for Plaintiffs' conduct in reporting Defendants' unlawful activities to authorities.

## II.     APPLICABLE LAW - Summary Judgment Standards

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986).

A party moving for summary judgment who does not have the burden of persuasion at trial, must produce evidence which either:  (1) negates an essential element of the non-moving party's claim, or (2) shows that the non-moving party does not have enough evidence of an essential element to ultimately carry his burden at trial.  *Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings and designate by affidavits, depositions, answers to

interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Cattret*, 477 U.S. 317, 324 (1986). A party opposing summary judgment must identify evidence establishing that a dispute as to a particular material fact is genuine. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opponent "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*.

"In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), abrogated on other grounds as noted in *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).

## III.    DISCUSSION

### A.    Collateral Estoppel and Res Judicata as to Plaintiff Leonard's Claims

On February 24, 2010, Plaintiff Terry Leonard was discharged from his employment with the Lake County Sheriff's Department. Dkt. 52-1 at 5 of 5. One year later, Leonard filed a civil action in the Montana Twentieth Judicial District Court, Lake County, against Lake County, Lake County Sheriff's Department, the

then Lake County Sheriff Lucky Larson, and "Mike Sergeant"[1] — *Leonard v. Lake County, et al*, Cause No. DV-11-58 (*Leonard I*).  In that action Leonard alleged the named defendants wrongfully terminated him from his employment in violation of Montana's Wrongful Discharge from Employment Act.  He further alleged that after his termination Lucky Larson and Mike Sargeant engaged in the practice of blacklisting Leonard in violation of Mont. Code Ann. § 39-2-801(1).

The defendants in *Leonard I* moved to dismiss Leonard's complaint.  On October 11, 2011, the state district court granted defendants' motion because Leonard never filed a brief in response to the motion.  The state court dismissed Leonard's complaint with prejudice.  Dkt. 52-2.

In view of *Leonard I*, Defendants here assert that the doctrine of collateral estoppel bars Leonard from further litigating any issues regarding either his discharge from his employment or the subsequent blacklisting Defendants allegedly committed against Leonard.  Defendants also argue that Leonard's claims as they pertain to Defendant Sargeant are barred under the doctrine of res judicata.

In response to Defendants' summary judgment motion, Leonard argues only

---

[1]When Leonard sued Defendant Sargeant in the referenced state court action, he spelled Sargeant's last name differently — he spelled it "Sergeant".  The parties do not dispute, however, that Sargeant was the defendant Leonard identified in his state court action.

that the doctrine of collateral estoppel does not apply. He does not argue that his claims against Sargeant are not barred by the doctrine of res judicata. For the reasons discussed, the Court concludes Defendants' motion is well taken in both respects.

It is well-established that a federal court must give a state court judgment the same preclusive effect that the judgment would be given by the courts of the State in which the judgment was rendered. *Allen v. McCurry*, 449 U.S. 90, 96 (1980); *Mack v. Kuckenmeister, CPA, MST*, 619 F.3d 1010, 1016 (9th Cir. 2010). This rule of interjurisdictional preclusion arises from the provisions of 28 U.S.C. § 1738 which state, in relevant part, as follows:

> [J]udicial proceedings [...] shall have the same full faith and credit in every court within the United States [...] as they have by law or usage in the courts of such State [...] from which they are taken.

28 U.S.C. § 1738. *See Noel v. Hall*, 341 F.3d 1148, 1159 (9th Cir. 2003). Thus, in considering the preclusive effect of a state court judgment, section 1738 requires federal courts to apply the law of res judicata and collateral estoppel as adopted by the State from which the subject judgment emerged. *Adam Bros. Farming, Inc. v. County of Santa Barbara*, 604 F.3d 1142, 1148 (9th Cir. 2010) (res judicata) and *Engquist v. Oregon Dept. of Agriculture*, 478 F.3d 985, 1007 (9th Cir. 2007) (collateral estoppel).

1. **Res Judicata**

Under Montana law, res judicata bars a party from re-litigating "a claim

once a final judgment has been entered." *Wiser v. Montana Board of Dentistry*,

251 P.3d 675,676 (Mont. 2011) (quotation and citation omitted). When a party

has had the opportunity to litigate a case to conclusion, res judicata prohibits the

party from re-litigating the same matter. *Id*. "The doctrine is premised on the

policy that there must be some end to litigation." *Id*.

As a threshold matter, res judicata applies only when a final judgment has

been entered in prior litigation between the parties. *Wiser*, 251 P.3d at 676-77.

Here, the state court's October 11, 2011 order in *Leonard I* dismissing Leonard's

complaint with prejudice constitutes a final judgment for purposes of res judicata.[2]

*First Bank, (N.A.) Western Montana, Missoula v. District Court for the Fourth*

*Judicial District*, 737 P.2d 1132, 1135, 1137 (Mont. 1987); *Smith v. Baxter*, 419

P.2d 752, 754 (Mont. 1966).

Once a final judgment has been entered between parties in a prior action, res

---

[2]Since Leonard did not respond to Sargeant's res judicata arguments, Leonard did not present evidence raising a genuine issue of material fact suggesting the October 11, 2011 order is not final. An order of dismissal becomes final when the time for filing a notice of appeal expires. *In re Marriage of Schoenthal*, 106 P.3d 1162, 1165 (Mont. 2005). *See also Wiser*, 251 P.3d at 678 (noting that a portion of the district court's ruling was not challenged on appeal and, therefore, was final for purposes of res judicata). Therefore, absent evidence presented by Leonard, the October 11, 2011 order is deemed final.

judicata bars the parties to that action from advancing further claims against each other in a subsequent action where the following elements of the doctrine are satisfied:

> (1) the parties or their privies are the same; (2) the subject matter of the present and past actions is the same; (3) the issues are the same and relate to the same subject matter; and (4) the capacities of the parties are the same [in reference] to the subject matter and [to the] issues between them.

*Wiser*, 251 P.3d at 677.

The Court concludes these four elements are satisfied in this case with respect to Leonard's claims against Sargeant. Leonard and Sargeant are parties to this action, and were both parties to the civil action in *Leonard I*.

The subject matter of Leonard's claims against Sargeant in this action is the same as the subject of blacklisting involved in *Leonard I*. Leonard's allegations assert Sargeant is liable for interfering "with the lawful employment or livelihood of the Plaintiffs" or, in other words, for blacklisting Plaintiffs relative to their future opportunities for employment or livelihood. Dkt. 1 at ¶ 32. Leonard's answers to Sargeant's interrogatories establish that he claims Sargeant is liable in this case for interfering with Leonard's employment opportunities after Leonard's termination from the Lake County Sheriff's Department. Dkt. 52-4 at 3-4 of 7.

The same issues relating to the same subject matter arose in both this case and in *Leonard I*. Again, based on Leonard's responses to Sargeant's

interrogatories, issues of Sargeant's conduct in blacklisting Leonard are the same and exist in both this case and in *Leonard I*.

Finally, the parties' capacities in this action are identical to their capacities in *Leonard I*. In both cases, Leonard commenced the actions in his individual capacity and as a former employee of the Lake County Sheriff's Department. In both cases, Leonard sued Sargeant in Sargeant's capacity as an individual and an employee of Lake County Sheriff's Department. Where a plaintiff litigates claims, "in an identical capacity, against the same defendant[,]" the final element of res judicata is satisfied. *Wiser*, 251 P.3d at 679 (citation and quotation omitted).

In a conclusory argument, Leonard attempts to avoid res judicata by asserting that his claims under RICO and the United States Constitution presented in this case were not plead in *Leonard I*. But Leonard's argument lacks merit.

Because res judicata operates to bar claims that a party already had an "opportunity" to litigate, the doctrine "bars not only issues that were actually litigated, but also those that *could have* been litigated in a prior proceeding." *Wiser*, 251 P.3d at 679 (emphasis in original) (quoting *State ex rel. Harlem Irrigation District v. Montana Seventeenth Judicial District Court*, 894 P.2d 943, 946 (Mont. 1995)). Thus, for purposes of res judicata, finality is accorded to a judgment entered "as to all issues which could have been properly raised

irrespective of whether the particular matter was in fact litigated." *Hall v. Heckerman*, 15 P.3d 869, 872 (Mont. 2000) (citation and quotation omitted).

The "new" claims advanced by Leonard in this case arise from the same subject matter as that which was involved in *Leonard I*. And Leonard was not precluded from prosecuting those claims in *Leonard I*.[3] Thus, those claims constitute claims and issues which could have been litigated in *Leonard I*, and are barred in this action by res judicata.

Because a final judgment was entered in *Leonard I*, and because the four elements of res judicata are satisfied in this case, the doctrine bars Leonard's claims against Sargeant, and Sargeant's motion as to res judicata should be granted.

## 2. Collateral Estoppel

Defendants argue that in view of *Leonard I*, certain issues that Leonard asserts in this action are barred under the doctrine of collateral estoppel. Specifically, Defendants contend Leonard is barred from re-litigating issues pertaining to his alleged wrongful discharge and alleged acts of blacklisting that are common to both cases. The Court agrees that some issues are barred.

---

[3] State courts have concurrent jurisdiction over civil RICO actions. *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990). The same is true with respect to section 1983 claims. *National Private Truck Council, Inc. v. Oklahoma Tax Commission*, 515 U.S. 582, 588-89 (1995).

Under Montana law, collateral estoppel similarly "embod[ies] a judicial policy that favors a definite end to litigation[.]" *Baltrusch v. Baltrusch*, 130 P.3d 1267, 1273 (Mont. 2006). Collateral estoppel bars serial litigation "of an issue that has been litigated and determined in a prior suit." *Id*. *See also McDaniel v. State*, 208 P.3d 817, 825 (Mont. 2009).

In Montana, the courts apply the following four-part test to determine whether collateral estoppel bars the re-litigation of a particular issue:

1. Was the issue decided in the prior adjudication identical to the issue raised in the action in question?

2. Was there a final judgment on the merits in the prior adjudication?

3. Was the party against whom preclusion is now asserted a party or in privity with a party to the prior adjudication?

4. Was the party against whom preclusion is now asserted afforded a full and fair opportunity to litigate the issue which may be barred?

*McDaniel v. State*, 208 P.3d 817, 825-826 (Mont. 2009). All four elements must be met before collateral estoppel may be invoked. *Id.*, 208 P.3d at 826.

In this case, Leonard asserts that incidents of blacklisting occurred which give rise to liability.[4] Dkt. 52-4 at 4 of 7. Given the circumstances of both cases, the asserted issues of blacklisting are identical to the blacklisting issues asserted in

_____

[4]The Court finds that none of Leonard's legal claims in his Complaint raise any issues relative to his alleged wrongful discharge from employment.

*Leonard I.*[5]

Leonard was a party to the *Leonard I* action in which a final order or judgment of dismissal was entered on October 11, 2011, and he is also a party to this action.

Finally, the party attempting to defeat a defense of collateral estoppel bears the burden of establishing "the absence of a full and fair opportunity to litigate." *McDaniel*, 208 P.3d at 829. Here, Leonard does not present any argument directed at the issue of whether, for purposes of collateral estoppel, he had a full and fair opportunity to litigate issues that he now raises in this case. Nor does he identify any evidence relevant to this element of collateral estoppel. Having failed to satisfy his burden, the Court cannot find that Leonard was denied a full and fair opportunity to litigate issues raised in this action. *See Baltrusch*, 130 P.3d at 1278 (concluding that the party failed to meet its burden with respect to this element).

Based on the foregoing, all of the elements of collateral estoppel are satisfied in this case. Consequently, the issues Leonard raises regarding incidents of blacklisting are barred by collateral estoppel. Defendants' motion should be granted in this respect.

---

[5]Defendants further cite to pages 140-141 of Leonard's deposition filed as Exhibit E to establish the identity of issues. Defendants did not, however, include pages 140-141 in Exhibit E.

### 3. Plaintiff Leonard's Fourth Amendment Claims - Qualified Immunity

Leonard advances a civil rights claim pursuant to 42 U.S.C. § 1983 against Doyle and Yonkin for allegedly violating Leonard's right against unreasonable searches and seizures as protected by the Fourth and Fourteenth Amendments to the United States Constitution. The Fourth Amendment protects against unlawful searches and seizures committed by governmental officials. Specifically, the Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. Amend. IV.

During the 2010 Lake County Sheriff election season Leonard operated a website opposing Doyle's candidacy for sheriff. Through the website Leonard sought to expose alleged corruption and unlawful activities occurring within the Lake County Sheriff's Department.

On September 29, 2010, Lake County Attorney Mitch Young applied for, and obtained, a search warrant to seize Leonard's personal home computer equipment. Acting under authority of the search warrant, Doyle and Yonkin, or other officers acting at their direction, seized Leonard's computer equipment from his home. Leonard was never given a copy of the return on the September 29, 2010 warrant.

The September 29, 2010 search warrant authorized only the seizure of Leonard's computer equipment. Nonetheless, early in February, 2011, Defendant Yonkin saved all of the contents of Leonard's computer equipment to another computer hard drive for storage at the Lake County Sheriff's Department, and returned the equipment to Leonard on February 10, 2011.

On May 6, 2011, Yonkin applied for and obtained a second search warrant to search the contents of the computer hard drive to which Yonkin had previously downloaded the contents of Leonard's personal computer equipment. Leonard never received formal notice of that second warrant, or a return reflecting the inventory of information obtained from any search of the separate hard drive. Yonkin and the Lake County Sheriff's Department still possess the contents of Leonard's personal computer equipment, and Leonard has never been charged with a crime.

Defendants move for summary judgment establishing they are entitled to qualified immunity from liability on Leonard's claims under the Fourth Amendment. The Court agrees.

The doctrine of qualified immunity renders individual state actors immune from suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects 'all but the plainly incompetent or those who knowingly violate the law.''" *Messerschmidt v. Millender*, ___ U.S. ___, 132 S. Ct. 1235, 1244-45 (2012) (citations omitted).

Under the qualified immunity analysis the court considers whether the facts, taken in the light most favorable to the party asserting the injury, show the defendant's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If no constitutional right was violated, the court need not proceed further with its inquiry. *Id*. at 201.

Another independent prong of the immunity analysis requires the court to consider whether the asserted constitutional right was clearly established. *Saucier*, 533 U.S. at 201. A right is clearly established if the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. 532 U.S. at 202.

> "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (citation omitted).

*Messerschmidt*, 132 S. Ct. at 1245.

The court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The qualified immunity analysis in the context of a Fourth Amendment claim follows the long-recognized rule that where a search or seizure is conducted pursuant to a search warrant, "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in 'objective good faith.'" *Messerschmidt*, 132 S. Ct. at 1245 (quoting *United States v. Leon*, 468 U.S. 897, 922-23 (1984)). Ordinarily, an officer cannot be expected to question the validity of a search warrant issued by a judge. *Id*. (quoting *Leon*, 468 U.S. at 921). The qualified immunity shield, however, could be lost when the indicia of probable cause is so lacking that it "render[s] official belief in [ the] existence [of probable cause] entirely unreasonable[,]" and "no reasonably competent officer would have concluded that a warrant should issue." *Id*. (citations and quotations omitted). But the threshold for establishing this exception to qualified immunity is high. *Id*.

In response to Defendants' summary judgment motion, Leonard clarifies and concedes that he does not argue that either the search warrant issued on September 29, 2010, the resulting search of his home, or the seizure of his

personal computer equipment was conducted in violation of his Fourth Amendment rights. Dkt. 54 at 3, 5 of 12. Therefore, with that concession, Defendants' motion for summary judgment granting them qualified immunity relative to the first search warrant and resulting seizures should be granted.

Furthermore, Leonard also concedes that he does not assert that Defendants' conduct in obtaining the second search warrant on May 6, 2011, was committed in violation of Leonard's Fourth Amendment rights. Dkt. 54 at 6 of 12. Thus, Defendants' motion regarding the second search warrant should also be granted.

In the end, Leonard asserts only that his Fourth Amendment rights were violated when Yonkin downloaded the contents of his computer equipment to a separate hard drive and viewed the contents in early February, 2011. Leonard argues Yonkin's conduct constituted an unlawful "search" that was not permitted by the September 29, 2010 search warrant. The Court disagrees.

Leonard claims that Yonkin confirmed, in his deposition testimony, that his conduct constituted a "search" of that content, and Leonard cites to Yonkin's December 5, 2012 deposition testimony at pages 21-22 in support of this claim. But Yonkin's testimony does not support Leonard's claim. Yonkin explained in his deposition that he merely saved the contents of Leonard's computer equipment, and he did not view it. Yonkin explained the process he followed,

17

including "write blocking" the data to prevent any changes from occurring to it, and making a "bit-for-bit copy" of the data on Leonard's equipment. Dkt. 55-3 at 6 of 14. He confirmed that the files were "not viewable" during the process he followed as it would have required additional software to view the files — software that he did not possess at the time. Dkt. 55-3 at 6-7 of 14. Yonkin states he "just took a snapshot of each of the computers without having to look at the data." *Id*.

The Court finds Yonkin's testimony establishes that, at most, he "seized" and saved the contents of Leonard's computer equipment in early February, 2011, as permitted by the search warrant. Yonkin did not view or "search" those contents in violation of the Fourth Amendment.

Furthermore, as Leonard recognizes, the search warrant issued on September 29, 2010, permitted law enforcement officers to search Leonard's home and to "seize" personal computers and computer equipment. Dkt. 52-6 at 2 of 3. That warrant also authorized officers to seize "information contained" in, and "information stored" in the personal computers and computer equipment. *Id*. Thus, the Court concludes Yonkin's conduct in downloading and seizing the data from Leonard's computer equipment was performed as authorized by the September 29, 2010 warrant. The prior issuance of that warrant "is the clearest

indication that [Yonkin] acted in an objectively reasonable manner" and is entitled to qualified immunity.  *Messerschmidt*, 132 S. Ct. at 1245.  Leonard does not argue, or present any evidence suggesting, that probable cause to support the warrant was lacking.  Having failed to establish Defendants violated Leonard's Fourth Amendment rights, Defendants are entitled to qualified immunity, and their motion for summary judgment relative to Leonard's Fourth Amendment claim should be granted.[6]

## B.    Claims Under RICO

Plaintiffs allege generally that all Defendants are liable for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq.  Although Plaintiffs do not identify a specific RICO provision on which they base their claims, the claims would most likely be cognizable under 18 U.S.C. §

---

[6]Leonard argues that Montana law requires a person executing a search warrant to make a return of the warrant, together with a written inventory of any evidence seized, to the judge who issued the warrant.  Mont. Code Ann. § 46-5-301.  Leonard states that no return was ever made regarding the September 29, 2010 search warrant, and that he was not notified that Yonkin downloaded and saved his computer files to another hard drive in early February, 2011.  He also notes that the May 6, 2011 search warrant was never served upon him, and that a return and inventory was not made relative to the May 6, 2011 search warrant until September 28, 2011.  That return and inventory was not provided to Leonard.  But Leonard asserts these events occurred in violation of Montana law — he does not argue Defendants violated his Fourth Amendment rights in this regard.  Leonard's brief establishes that he describes these numerous irregularities in the search and seizure events for the purpose of supporting his claims of retaliation under the First Amendment, not to support any Fourth Amendment violation.

1962(c) which provides as follows:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).

To succeed on a RICO claim under 18 U.S.C. § 1962(c), "a plaintiff must show '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 873 (9th Cir. 2010) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)).

Defendants argue they are entitled to summary judgment dismissing Plaintiffs' RICO claims for two reasons: (1) Plaintiffs have failed to establish they suffered any "concrete economic loss" caused by Defendants' alleged activities as required to succeed on a RICO claim; and (2) Plaintiffs have failed to identify any evidence supporting the existence of either an "enterprise" or a "pattern of racketeering activity." The Court finds Plaintiffs have clearly failed to identify any evidence suggesting that Defendants constituted an enterprise engaged in a pattern of racketeering activity. Therefore, it is not necessary to address the issue of whether Plaintiffs suffered the requisite concrete economic loss under RICO.

Each of the four elements of a RICO claim under section 1962(c) requires additional factual proof. A racketeering activity is an act that is indictable as a criminal offense under several specific provisions of Title 18 of the United States Code. 18 U.S.C. § 1961(1). *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 620 (9th Cir. 2004) (citing *Schreiber Distributing Company v. Serv-Well Furniture Company, Inc.*, 806 F.2d 1393, 1399 (9th Cir. 1986)).

A "pattern of racketeering activity" under RICO similarly requires unique factual proof. A pattern "requires at least two acts of racketeering activity" within a ten-year period of time. 18 U.S.C. § 1961(5); *United States v. Fernandez*, 388 F.3d 1199, 1221 (9th Cir. 2004). The evidence must also establish that the two predicate acts are sufficiently "related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989) (emphasis in original). *See also Fernandez*, 388 F.3d at 1221 n.11.

RICO defines an "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity[.]" 18 U.S.C. § 1961(4). The "enterprise" element under RICO contemplates an entity that is separate and apart from the "pattern of racketeering activity" in which it engages. *Odom v.*

*Microsoft Corporation*, 486 F.3d 541, 549 (9th Cir. 2007) (citing *United States v.*

*Turkette*, 452 U.S. 576, 583 (1981)).

> The enterprise is an entity, [...] a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute. The former is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. The latter is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise.

*United States v. Turkette*, 452 U.S. 576, 583 (1981).

As required in *Turkette*, for defendants to qualify as an "enterprise," a

plaintiff must establish facts reflecting the existence of an entity or "a group of

persons associated together for a common purpose of engaging in a course of

conduct[,]" that the group is "an ongoing organization, formal or informal," and

that the associates of the group "function as a continuing unit." *Odom*, 486 F.3d at

552 (quoting *Turkette*, 452 U.S. at 583). An "ongoing organization is a vehicle for

the commission of two or more predicate crimes." *Odom*, 486 F.3d at 552

(citations and quotations omitted). To function as a continuing unit, the evidence

must establish that the associates' behavior constitutes "'ongoing' rather than

isolated activity." *Odom*, 486 F.3d at 553.

Review of both Plaintiffs' Brief in Opposition and their Statement of

Genuine Issues reflects that Plaintiffs have neither presented any argument, nor

identified any evidence in the record relevant to the foregoing required elements of a RICO claim.  Although Plaintiffs refer to evidence of several incidents of alleged wrongdoings committed by various Defendants and also other individuals who are not parties to this action, Plaintiffs have wholly failed to raise any genuine issue of material fact on which a jury could conclude that Defendants committed acts as an enterprise engaged in a pattern of racketeering activity.  Plaintiffs have not identified any evidence demonstrating that Defendants were associated together for a common purpose of engaging in a course of conduct in an ongoing organization, functioning as a continuing unit for the commission of two or more predicate crimes.  Having failed to present evidence directed at the detailed and necessary elements of a RICO claim, Plaintiffs allegations cannot survive summary judgment, and Defendants' motion should be granted in this respect.

### C.  **First Amendment - Retaliation**

The First Amendment to the United States Constitution prohibits state actors from retaliating against individuals for engaging in constitutionally protected activities.  *Blair v. Bethel School District*, 608 F.3d 540, 543 (9th Cir. 2010).

> To recover under § 1983 for such retaliation, a plaintiff must prove:  (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and

(3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action.

*Blair*, 608 F.3d at 543 (citing *Pinard v. Clatskanie School Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006)).  The alleged adverse action need only be one "that is reasonably likely to deter" a plaintiff from engaging in constitutionally protected activity.  *Blair*, 608 F.3d at 543 n.1 (citation omitted).  A defendant's retaliatory intent to chill a plaintiff's conduct, however, must be the but-for cause of the alleged retaliatory action.  *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 900-901 (9th Cir. 2008).

### 1.    <u>Plaintiff Leonard</u>

Leonard's only claim of retaliation asserts Defendants Doyle and Yonkin seized his personal computer equipment from his home for the sole purpose of retaliating against Leonard to silence his efforts to operate his website and express his opposition to Doyle's candidacy for sheriff in the fall of 2010.  Leonard, however, does not present any argument, and does not identify any evidence raising a genuine issue of material fact suggesting that the mere act of taking an individual's personal home computer equipment away would chill a reasonable person's desire to continue expressing statements and opinions relative to an election campaign through the use of other computer equipment.  Leonard does not even suggest that Doyle and Yonkin's conduct actually prevented him

continuing to voice his opposition to Doyle's candidacy through other means. Thus, Defendants' summary judgment motion sufficiently establishes that Leonard does not have any evidence of an essential element of his claim of retaliation to ultimately carry his burden at trial. Leonard's claim of retaliation should be dismissed.

### 2. Plaintiff Ben Woods

Plaintiff Ben Woods asserts Defendants committed acts of retaliation against him in response to his conduct in opposing Doyle's candidacy for sheriff in the fall of 2010. Dkt. 55 at ¶¶ 18-19. But, in response to Defendants' summary judgment motion, Woods asserts only that he "felt" that the alleged retaliation was due to his opposition to Doyle's candidacy. Woods' speculation, conjecture, or supposition is insufficient to raise a genuine issue of material fact to avoid summary judgment. *McSherry v. City of Long Beach*, 584 F.3d 1129, 1136, 1138 (9th Cir. 2009). Thus, Woods has not identified evidence suggesting that any alleged adverse employment action to which he was allegedly subjected was caused by his conduct in exercising his First Amendment right to oppose Doyle's candidacy.

### 3. Plaintiffs Levi Read, Michael Gehl, Steven Kendley, and Ben Woods

The remaining claims of retaliation advanced by Plaintiffs Levi Read,

Michael Gehl, Steven Kendley, and Ben Woods in response to Defendants'
summary judgment motion are based only on these Plaintiffs' actions in reporting
various unlawful activities in which Defendants had engaged. Dkt. 55 at ¶¶ 21, 33
and 42 (Read); Dkt. 55 at ¶¶ 24, 31, 32, 33, and 36 (Gehl); Dkt. 55 at ¶¶ 24, 29-31,
33, 36, and 66 (Kendley); Dkt. 55 at ¶ 18 (Woods). Plaintiffs Read, Gehl, Kendley
and Woods do not argue, and they do not identify any evidence in the record to
suggest, that Defendants may have retaliated against them based on their conduct
in supporting Kendley's candidacy for sheriff, and opposing Doyle's candidacy.

Plaintiffs' conduct in reporting Defendants' alleged unlawful activities
occurred while Plaintiffs were public employees employed with the Lake County
Sheriff's Department which raises further legal issues. First Amendment law
regarding claims of retaliation has unique application in the context of legal claims
for relief made by public employees. A public employee may be subjected to
various conditions imposed upon the employment, including conditions which
may have some affect upon the public employee's constitutional rights. *See
Garcetti v. Ceballos*, 547 U.S. 410, 417-19 (2006). But, a public employee does
not surrender all "First Amendment rights by reason of the[] employment." *Id*.,
547 U.S. at 417. "[T]he First Amendment protects a public employee's right, in
certain circumstances, to speak as a citizen addressing matters of public concern."

*Id*.

Nonetheless, limits do exist upon a state or local governmental employee's rights under the First Amendment. The law requires that a balance be struck "between the interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Education of Township High School District 205, Will County, Illinois*, 391 U.S. 563, 568(1968). To arrive at that balance, the Ninth Circuit Court of Appeals follows "a sequential five-step series of questions:"

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009). In this sequential analysis, a plaintiffs' failure to establish any one of the five considerations in his favor subjects his First Amendment claim of retaliation to dismissal. *Id*. at 1070-72.

The second factor in the sequential analysis — whether the plaintiff spoke as a private citizen or a public employee — requires consideration of whether the employee expressed opinions pursuant to duties as a public employee. *Garcetti*,

547 U.S. at 421. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id*. "[S]peech which 'owes its existence to an employee's professional responsibilities' is not protected by the First Amendment." *Huppert v. City of Pittsburg*, 574 F.3d 696, 702-03 (9th Cir. 2009) (quoting *Garcetti*, 547 U.S. at 421). "[T]he plaintiff bears the burden of showing the speech was spoken in the capacity of a private citizen and not a public employee." *Eng*, 552 F.3d at 1070.

Plaintiffs here engaged in expressive conduct — reporting Defendants' alleged unlawful activities — at a time when they were employed as law enforcement officers and public employees. Therefore, the Court must consider the Plaintiffs' expressive conduct in the context of the duties imposed upon them as public employees.

As a general principle, law enforcement officers, peace officers, and sheriff deputies are charged with duties requiring them to preserve the peace and security of the community, to uphold and enforce the laws of the state and local governments, to prevent and investigate public offenses and the commission of crimes, to assist in the detection of crime, and to disclose information known to

the officers that may lead to the apprehension and punishment of those who have transgressed the laws of the community.  *See e.g.* Mont. Code Ann. §7-32-2121(1)-(3), and (12) (duties of sheriff); Mont. Code Ann. § 7-32-201(3) (defining the "general law enforcement duties" of reserve and auxiliary officers as "patrol operations performed for detection, prevention, and suppression of crime and the enforcement of criminal and traffic codes of this state and its local governments"); and *Huppert v. City of Pittsburg*, 574 F.3d 696, 707 (9th Cir. 2009) (relying on California law).  These duties include the duty to investigate corruption and other wrongdoings in which fellow law enforcement officers are engaged, and to disclose or report those activities to the authorities.  *Huppert*, 574 F.3d at 707.

Plaintiffs exercised their purported free speech rights to report various unlawful activities in which Defendants were involved.  Plaintiff Steven Kendley reported to the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives that Defendant Dan Duryee unlawfully altered and converted a Sheriff's Department rifle to a machine gun.  All plaintiffs voiced complaints alleging that Duryee falsely informed law enforcement authorities that he served in the United States Marine Corp.  Plaintiffs also complained that Defendants Doyle, Sargeant and Duryee had engaged in unlawful poaching of wildlife in a group called the "Coyote Club", and they voiced complaints asserting that officers of the Lake

County Sheriff Department had stolen ammunition from the Lake County Sheriff's Department. Plaintiffs reported these alleged activities to either the Lake County Sheriff, the Montana Public Safety Officer Standards and Training Council, or the Montana Attorney General's Office.

Throughout their Complaint, Plaintiffs allege that they voiced their complaints in compliance with their "duties as Peace Officers to report crimes involving other Officers of [the] Lake County Sheriff's Department." Dkt. 1 at ¶¶ 9, 10, and 15. Furthermore, Plaintiffs allege they voiced their complaints based on information of which they became aware "[d]uring the course and scope [of] their employment as Lake County Deputies[.]" Dkt. 1 at ¶ 8. In response to Defendants' motion, Plaintiffs do not present any argument, and they do not identify any evidence in the record that would raise a genuine issue of material fact suggesting that Plaintiffs voiced their complaints in their capacities as private citizens, not as public employees. Thus, Plaintiffs have failed to meet their burden of proof on this element of their claim.

Where a plaintiff fails to establish that he or she spoke as a private citizen, and the evidence demonstrates the plaintiff acted in accordance with a duty of employment, then the speech is not protected under the First Amendment, and the claim of retaliation should be dismissed. *Eng*, 552 F.3d at 1071. Therefore,

Plaintiffs' claims alleging that Defendants retaliated against them for having

reported Defendants' corruption, crimes, and unlawful activities to law

enforcement authorities should be dismissed.

**IV.**    **CONCLUSION**

Based on the foregoing, IT IS HEREBY RECOMMENDED that

Defendants' summary judgment motion be granted, and this action be dismissed.

Dated this 9th day of July, 2013.

_____

Jeremiah C. Lynch

United States Magistrate Judge